**In re REED, A Minor Child.**

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77466.

Decided Jan. 17, 2002.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Kristine R. Travaglini, Assistant Prosecuting Attorney, for appellee.

James A. Draper, Cuyahoga County Public Defender, Patricia Koch Windham, Francis Krajenke and Salvatore Amata, Assistant Public Defenders, for appellant.

---

KARPINSKI, Administrative Judge.

{¶ 1}   Defendant-appellant Jamyn Reed appeals the trial court's finding that he is a delinquent child.

{¶ 2} Reed, a 5'8" 175–pound thirteen-year-old, was waiting at the school bus stop with two girls, thirteen-year-old Tia and twelve-year-old Candance. When Tia bent over to get something from her bookbag, Reed took her by the waist, lifted her upside down between his legs, then dropped her on her head, a move he had seen on T.V. wrestling called "the Pedigree." Reed immediately apologized and said that he had only been joking around.

{¶ 3} Tia complained of a headache, dizziness, and soreness in her neck. She fell once walking to the school bus. On the bus, Tia and her friend complained to the bus guard, and all three children reported to the principal's office upon arriving at school. The school office called the police and Tia's mother. Tia and her mother went to the police station and filled out a report. She did not seek medical attention.

{¶ 4} Reed initially was charged with violating R.C. 2903.11(A)(1), felonious assault, which if committed by an adult would be a felony of the second degree. Prior to trial, the state reduced the charge in the amended complaint from the original charge of felonious assault to attempted felonious assault "in violation of Ohio Revised Code 2923.02, a felony of the third degree." Amended Complaint.

{¶ 5} At the end of the adjudicatory hearing, the court sua sponte amended the complaint again, eliminated the "attempt" charge, and found Reed delinquent by reason of not just felonious assault, but of felonious assault by means of a "deadly weapon," a second degree offense.

{¶ 6} At the end of the hearing, the court stated that it was "going to amend the statute *back up*. Instead of attempted felonious assault I'm going to find you guilty of felonious assault and I'm finding that on the basis of 2903.[11](A)(2), that says no person shall knowingly cause or attempt to cause physical harm to another by means of a deadly weapon and I'm finding that using the ground in the manner in which the evidence suggests you did can render that to be a deadly weapon. So I find you delinquent of felonious assault, a felony in the second degree." (Emphasis added.)

{¶ 7} The court clearly stated that it knew that it was increasing the degree of the charge against appellant.

{¶ 8} The dispositional hearing was held a month later. The probation officer recommended probation with referral to anger management classes and twenty-five hours of community service in lieu of restitution. The state agreed with the recommendation of the probation officer except that it recommended restitution.

{¶ 9} The court ordered probation but did not order anger management classes. The court also gave Reed a choice between twenty-five hours of community service or donating five frozen turkeys to the Salvation Army. Reed

chose to donate the turkeys. The court also barred Reed from watching wrestling on T.V. for the duration of his probation.

{¶ 10} Reed timely appealed.

{¶ 11} For his first assignment of error, appellant states:

{¶ 12} "I. By amending the complaint at the close of evidence to charge a more serious offence containing an unanticipated element, the trial court abused its discretion, ignored an explicit prohibition of Juvenile Rule 22(B), and violated Master Reed's due process right to adequate notice under the federal and state Constitutions."

{¶ 13} The statute addressing felonious assault, R.C. 2903.11, states:

{¶ 14} "(A) No person shall knowingly:

{¶ 15} "(1) Cause serious physical harm to another * * *;

{¶ 16} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.[1]

{¶ 17} "(B) Whoever violates this section is guilty of felonious assault, a felony of the second degree." (Footnote added.)

{¶ 18} The court stated that the deadly weapon in this case was the ground. R.C. 2923.11 defines "deadly weapon" for the purpose of this statute as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). Appellant states that he was unable to defend himself against the weapon charge without notice of it, in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and of Section 16, Article I of the Ohio Constitution.

{¶ 19} Appellant further claims that the court's addition violated Juv.R. 22(B), which states:

{¶ 20} "Any pleading may be amended at any time prior to the adjudicatory hearing. After the commencement of the adjudicatory hearing, a pleading may be amended * * * if the interests of justice require, upon order of the court. A complaint charging an act of delinquency may not be amended unless agreed by the parties, if the proposed amendment would change the name or identity of the specific violation of law so that it would be considered a change of the crime charged if committed by an adult."

---

1. Note that the statute was amended effective March 30, 2000. Because the incident here occurred in 1999, we apply the law in effect at the time of the incident.

■ {¶ 21} In the comment following Juv.R. 22(B), the Supreme Court Rules Advisory Committee has explained that the court can change the charge only to a "lesser included offense." It stated as follows: "The revision to Juv.R. 22(B) prohibits the amendment of a pleading after the commencement or termination of the adjudicatory hearing unless the amendment *conforms to the evidence presented and also amounts to a lesser included offense of the crime charged.* Because juveniles can be bound over as adults and become subject to the jurisdiction of the criminal division of the common pleas courts, it is important that Juv.R. 22(B) conform with Crim.R. 7(D), which similarly prohibits any amendment which would result in a change in the identity of the crime charged." (Emphasis added.) Juv.R. 22(B) 1994 Staff Note.[2]

{¶ 22} The Supreme Court of Ohio has provided a definition of a lesser included offense:

{¶ 23} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *In re Whitley* (Aug. 19, 1996), Stark App. No. 1995CA00284, 1996 WL 488806, citing *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311, at paragraph three of the syllabus.[3]

■ {¶ 24} The change made by the court in the complaint in this case does not meet the first prong of this test: a second degree felony adjudication carries

---

2. {¶ a} The dissent cites a 1975 case, *In re Haas*, to support its assertion that the sentence a juvenile receives upon being found delinquent does not matter because the juvenile is not being punished but rather is being "reformed." This conclusion ignores the 1994 amendment to Juv.R. 22(B).

{¶ b} Further, the dissent argues that the issue is moot because the term to which the juvenile could be sentenced was one year and the appeal was heard more than one year after sentencing. Again, this argument ignores the fact that the court did not state a time limit to the probation and that the juvenile court retains jurisdiction over the juvenile until he reaches the age of twenty-one. *In re Pearl* (Oct. 18, 2001), Cuyahoga App. No. 79071, 2001 WL 1243942; *In re Cross* (Dec. 11, 2000), Stark App. No. 2000CA00122, 2000 WL 1838887; *In re Bracewell* (1998), 126 Ohio App.3d 133, 709 N.E.2d 938; *In re Kelly* (Nov. 7, 1995), Franklin App. No. 95APF05–613, 1995 WL 656944. Thus the juvenile was indeed prejudiced by the court's action.

3. {¶ a} R.C. 2945.75 also addresses the degree of crime with which an adult may be convicted following indictment. It states:

{¶ b} "(A) When the presence of one or more additional elements makes an offense one of more serious degree:

{¶ c} "(1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense."

a longer minimum term of confinement than a third degree felony. The court sentenced appellant to "the legal care and custody of the Ohio Department of Youth Services pursuant to Section 2151.355(A)(5)(a) of the Revised Code for institutionalization in a secure facility for an indefinite period consisting of a *minimum period of one year * * *.* The order made in this matter committing the child to the Ohio [Department of] Youth Services is suspended. The child is placed on probation and subject to the rules of this court under the supervision of a court probation officer." (Emphasis added.)

{¶ 25} The minimum confinement for a child found delinquent for an offense that would be a felony two if committed by an adult is one year.[4] If appellant were ordered into confinement, he would now be confined for a minimum of one year, rather than six months, the minimum confinement for a third degree offense.

{¶ 26} At the dispositional hearing, the court stated, "[I]f you screw up on probation in the slightest way and you have to come back in here 'cause you violated the terms of your probation by not going to school, not following the rules, getting into anymore [sic] fights, anything whatsoever, when you come back in here you will go into the Department of Youth Services." Dispositional Hearing Tr. at 12.

{¶ 27} The court's amendment of the complaint from a felony three to a felony two made a significant difference in appellant's potential confinement.

{¶ 28} The court's change in the indictment also fails to satisfy the second and third prongs of the Supreme Court definition of "lesser included offense." The second prong, which requires that the greater offense cannot be committed without also committing the lesser offense also fails in this case. Felonious assault with a deadly weapon cannot be committed without committing an attempted felonious assault. Conversely, attempted felonious assault can be committed without committing felonious assault with a deadly weapon. It follows therefore that felonious assault with a deadly weapon is the greater, not the lesser, offense.

{¶ 29} The third prong of the Supreme Court definition, which requires that the greater offense contain an element not included in the lesser offense, also

---

4. The minimum confinement for a level three offense is six months. R.C. 2151.355 states that the court can commit the child to "an indefinite term consisting of a *minimum period of six months* and a maximum period not to exceed the child's attainment of twenty-one years of age" for a delinquency finding based upon *a felony of the third, fourth, or fifth degree.* (Emphasis added.) R.C. 2151.355(A)(4). For a commitment for delinquency which would be *a first or second degree felony,* the court can order him to be institutionalized "for an indefinite term consisting of a *minimum period of one year* and a maximum period not to exceed the child's attainment of twenty-one years of age." (Emphasis added.) R.C. 2151.355(A)(5)(c).

fails in the case at bar. The element of the deadly weapon is not found in the charge the juvenile was tried on, that is, attempted felonious assault under 2903.11(A)(1) and 2903.02. The attempted felonious assault thus cannot be the greater offense.

{¶ 30} The judge found the juvenile guilty of 2903.11(A)(2), which requires this added element of a deadly weapon. Felonious assault with a deadly weapon fails to meet all three prongs of the Supreme Court definition and is not, therefore, a lesser included offense of attempted felonious assault.

{¶ 31} The prosecutor argues that the court has the authority to change the offense charged and cites *In re Felton* (1997), 124 Ohio App.3d 500, 706 N.E.2d 809, to support its position. In *Felton*, however, the originally charged conduct, if committed by an adult, would have constituted a third degree misdemeanor sexual imposition. The charge was amended *down* to "unruliness," a lower level of offense. To make a delinquency finding, a court must find that the juvenile has committed an act which if committed by an adult would be a crime. A finding of unruliness merely requires a finding of truancy or other noncriminal behavior.[5] Clearly, the *Felton* court, by finding its juvenile unruly rather than delinquent, made its finding on a lesser charge.

{¶ 32} The amended complaint in *Felton* differs significantly from the case at bar: the amended charge, had Reed been an adult, would have *increased* the seriousness of the felony from a third degree to a second degree. Thus because the cases are substantially different, *Felton* is not applicable to the case at bar. When the court added an element to the crime and increased the potential period of confinement, the court improperly added a greater offense.

{¶ 33} It is a long-held principle of law that a criminal defendant cannot be "surprised" by a charge. As the United States Supreme Court stated, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States* (1960), 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252. The amended complaint contains no reference to a deadly weapon. The "surprise" addition of the element of a deadly weapon violates the safeguards guaranteeing a fair trial or hearing. The trial court erred in violation of Juv.R. 22(B) when it added the element of the deadly weapon to the charge after the adjudicatory hearing had been held.

{¶ 34} The appellant's first assignment of error is well taken.

---

**5.** It should be noted that the court in *Felton* erred in relying on case law published prior to the 1994 amendment to the Juvenile Rules. Unfortunately, the *Felton* court, as well as many others, still relied on *In re Burgess* (1984), 13 Ohio App.3d 374, 13 OBR 456, 469 N.E.2d 967, which had held that the juvenile court could find a child delinquent of a statute not named in the complaint. Juv.R. 22(B) as amended in 1994 prohibits the court from adding an offense that would increase or change the offense charged.

{¶ 35}   For his second assignment of error, appellant states:

{¶ 36}   "II.   The trial court violated Jamyn Reed's constitutional rights to due process by denying his motion to dismiss when the state had presented no evidence on essential elements of the delinquency defense charged in the complaint as originally amended."

{¶ 37}   Appellant argues that the state failed to prove that he inflicted "serious bodily harm" to Tia when he dropped her on her head.   Appellant supports this claim by observing that she did not seek medical treatment and introduced no evidence of an existing injury.

{¶ 38}   First, we note, the state amended its complaint to attempted felonious assault, which amendment would circumvent this problem.   Second, appellant has too narrow a view of the requisite harm.   R.C. 2901.01(A)(5)(c) defines "serious physical harm to persons," in part, as "Any physical harm * * * that involves some temporary, substantial incapacity * * *." Evidence that Tia was dizzy and fell on the way to the bus could fit this definition.

{¶ 39}   Appellant points out another element that he claims the state failed to prove, the element of intent.   Immediately after dropping Tia on her head, appellant said, "I'm sorry, I was just joking around, fooling around."   He said he executed a move that he had seen frequently on T.V. There is no direct evidence that he considered this move dangerous.   It is true that children often have difficulty distinguishing between reality and what they see on T.V. The wrestlers on T.V. are professional actors who pretend to execute dangerous moves on each other, but who always get up uninjured after the match.   An intent to harm, on the other hand, may be inferred from Reed's actions.   And the judge may reasonably conclude that Reed could have foreseen some harm would result from dropping Tia on her head.   Thus we cannot conclude there was no evidence of intent.   Rather, the youth's intent is a question for the trier of fact, and the court here could reasonably have found no basis to deny Reed's motion to dismiss.   This assignment of error is overruled.

{¶ 40}   For his third assignment of error, appellant states:

{¶ 41}   "III.   The trial court violated Jamyn Reed's due process rights by adjudicating him delinquent of felonious assault with a deadly weapon when no evidence was presented that the child used a deadly weapon or knowingly caused physical harm."

{¶ 42}   In light of the discussion in Assignment of Error I, we need not address this assignment of error.

{¶ 43}   For his fourth assignment of error, appellant states:

{¶ 44} "IV. The trial court violated Master Reed's Fifth Amendment right against self–incrimination when it encouraged him to admit culpability at the dispositional hearing, engaged him in a dialogue despite his stated desire to be silent, then imposed a harsh disposition, based on adverse inferences from his refusal to testify at adjudication or to admit at disposition."

{¶ 45} Given the disposition of the first three assignments of error, this issue is moot.

Judgment affirmed in part,
reversed in part
and cause remanded.

FRANK D. CELEBREZZE, JR., J., concurs.

MICHAEL J. CORRIGAN, J., dissents.

MICHAEL J. CORRIGAN, Judge, dissenting.

{¶ 46} As I would affirm the sentence imposed by the trial court in this matter, I must respectfully dissent. Despite the majority's contention that the trial court's amendment of the indictment increased the potential for confinement if the appellant violated probation, the record clearly demonstrates that the actual sentence of probation with conditions that was imposed by the trial court, as opposed to a theoretical sentence of confinement that could have been imposed, was within the sentencing guidelines under either R.C. 2151.355(A)(4) or R.C. 2151.355(A) and (C).

{¶ 47} The juvenile law exists in large part to promote the rehabilitation of juvenile offenders. *Kent v. United States* (1966), 383 U.S. 541, 554, 86 S.Ct. 1045, 16 L.Ed.2d 84 (interpreting the Juvenile Court Act as providing measures of guidance and rehabilitation for the child and protection for society). Juveniles are not technically found guilty, but rather are adjudicated delinquent, unruly, or not. Juvenile court is neither criminal nor penal in nature, but is an administrative police regulation. The concept relative to juvenile offenders is one of a corrective nature emphasizing reformation rather than punishment. *In re Haas* (1975), 45 Ohio App.2d 187, 74 O.O.2d 231, 341 N.E.2d 638.

{¶ 48} The majority finds prejudice in the amendment of the indictment due to the fact that the *minimum* period of institutionalization is greater for a level two offense than a level three offense. This distinction totally misses the point. The appellant was *not* committed to the legal custody of the Department of Youth Services; rather, he was placed on probation and ordered to deliver five turkeys to the court for distribution.

{¶ 49} The maximum punishment for felonious assault, regardless of whether it would constitute a second or third degree felony if committed by an adult, is incarceration until the age of twenty-one. The "sentence" handed down by the court was well within the sentencing range for either the offense as charged or the offense under which the trial court ultimately found the appellant delinquent.

{¶ 50} R.C. 2151.355(A)(2), that authorizes a sentence of probation with accompanying conditions as prescribed by the court, makes no distinction between delinquent acts that would be a second degree felony if committed by an adult and those that would be a third degree felony if committed by an adult. R.C. 2151.355(A)(2) is the subsection under which the appellant was actually sentenced, not the sections referenced by the majority under which the appellant could have been committed to the custody of the Department of Youth Services. Thus, the appellant was not prejudiced in any manner by the court's amendment of the indictment.

{¶ 51} Because there was no prejudice to the appellant from the court's amendment of the indictment, I would find the same to be harmless error. Error that occurs during sentencing proceedings is deemed harmless where it does not "affect the sentence imposed by the trial court." *State v. Johnson* (Apr. 20, 1989), Cuyahoga App. Nos. 55295, 55811, 55812, 1989 WL 43586.

{¶ 52} Additionally, the majority's argument concerning the potential length of incarceration should the appellant violate probation is moot, given the amount of time that has passed since sentencing, which is due in large part to the repeated extensions of time requested by the appellant to file the record and his appellate brief.

{¶ 53} The sentencing hearing at issue took place on November 1, 1999, more than two years ago. The notice of appeal was filed on January 6, 2000, and this court heard oral arguments on February 7, 2001. Thus, the majority's speculation that "[i]f the appellant were ordered into confinement, he would now be confined for a minimum of one year, rather than six months * * *," is no longer relevant. Remanding this matter for resentencing at this time under the proper charge is utterly pointless.

{¶ 54} Because the trial court's amendment of the indictment after trial in this case clearly constituted harmless error and in no way prejudiced the appellant, I would affirm.